POTTER, Respondent, vs. VAN NORMAN, Appellant.

*January 9 — January 29, 1889.*

PLEADING.  *(1) Striking out demurrer as frivolous: When order reversed.  (2) Money had and received: Action, tort or contract? Conversion.*

1. The rule that an order striking out as frivolous a demurrer to the complaint and allowing the defendant to answer upon the usual terms will not be reversed unless the demurrer was well taken, adhered to.
2. A complaint shows that property was consigned in the name of one H. to the defendant to be sold, but that H. was not the owner or entitled to the proceeds thereof, and that the plaintiff was entitled to such proceeds; that the defendant sold the property for $824.15 above all expenses; that before receiving or selling said property the defendant had full notice of plaintiff's right to the proceeds or value thereof, and plaintiff duly demanded of him such value before the receipt or sale thereof by the defendant, but, notwithstanding this, the defendant unlawfully converted to his own use the aforesaid value of the property, to wit, $824.15, and refused and still refuses to pay or account to the plaintiff therefor, though due demand has been made. Judgment is demanded for said sum of $824.15, with interest from the date of the sale. *Held:*
    (1) The facts stated are sufficient to entitle the plaintiff to recover.
    (2) The action is upon contract for money had and received. The allegation of a conversion does not, in view of the other allegations, render it a tort action.

APPEAL from the Circuit Court for *Milwaukee* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *H. C. Sloan.* They contended, *inter alia,* that the right of the plaintiff to all the proceeds of the shipment was dependent upon his contract with Thayer. He had himself but a partial interest in the hogs, the extent of which is not shown. But he has no rights under the contract with

Thayer because he violated that contract by his agreement to sell to Harris. By the terms of the contract with Thayer the plaintiff was to receive the *net proceeds* upon a sale by the commission merchant and no other sum. He was, in effect, a mere agent to receive the amount realized upon *this* sale, and had no authority to otherwise dispose of the hogs. It also appears that, prior to the receipt or sale of the hogs, the defendant had notice of the plaintiff's *rights in and to the proceeds*, so that, according to the complaint, the defendant had notice of the existence of the contract; and as the hogs were actually shipped in the name of Harris, defendant knew that plaintiff had not fulfilled his contract with Thayer and hence was not entitled to the proceeds. Defendant was therefore not obliged to make payment until instructed by Thayer so to do; and until so instructed was not liable to an action. *Cooley v. Betts*, 24 Wend. 203; *Halden v. Crafts*, 4 E. D. Smith, 490; *Brink v. Dolsen*, 8 Barb. 337. Defendant was a sub-agent of Thayer, and liable to him. Mechem's Agency, sec. 524. The complaint alleges that before suit Thayer assigned to the plaintiff his interest in the hogs and his claim against the defendant, but it does not allege that the plaintiff notified the defendant of such assignment. *Webber v. Roddis*, 22 Wis. 61.

Counsel also urged the reconsideration of the rule making no substantial distinction between striking out a demurrer as frivolous and overruling it on argument. The rule abrogates rights conferred upon parties by secs. 2845–2847, R. S. These sections treat a demurrer as an issue which is to be placed upon the calendar for trial, in the same manner as other issues, at a term of court. But under the rule in question the party whose pleading is demurred to may safely force a hearing at any time, even though he knows the demurrer is not frivolous.

For the respondent there was a brief signed by *Van Dyke*

& *Van Dyke,* attorneys, and *H. T. Reed,* of counsel, and oral argument by *G. D. Van Dyke.*

TAYLOR, J. This is an appeal from an order of the circuit court of Milwaukee county, striking out a demurrer of the defendant to the complaint of the plaintiff as frivolous, on motion of the plaintiff. The order striking out the demurrer allows the defendant to answer the complaint within twenty days from the date of the order on the payment of $10 costs.

Upon an appeal from such order this court has repeatedly held that the order of the circuit court will not be reversed unless it appears that the demurrer was well taken. The question whether it was frivolous or not will not be considered by this court. See *Hoffman v. Wheelock,* 62 Wis. 434, and cases cited in the opinion in that case.

Was the demurrer well taken? We think this question was decided rightly by the court below. The complaint substantially alleges that on the 10th day of January, 1888, the plaintiff and one Thayer were in possession of and the owners of a lot of live hogs at Cresco, in the state of Iowa; that about that time the plaintiff, with the assent and knowledge of his co-owner, delivered the hogs to the Chicago, Milwaukee & St. Paul Railway Company at Cresco, and with the assent of said Thayer the said hogs were consigned in the name of the plaintiff alone, to be transported and delivered by said railway company to the defendant, a commission merchant at Milwaukee, Wisconsin, to be sold by said defendant for the plaintiff, and to account to the plaintiff for the net proceeds or value thereof. The complaint then states that after the property had been shipped and consigned as above stated, but before the same started on its way to Milwaukee, the plaintiff made a verbal agreement with one Harris, whereby plaintiff was to sell to said Harris said hogs, on the payment to him of the cost thereof,

to wit, $900, and $25 more, the whole to be paid to plaintiff from the proceeds of said hogs as soon as sold; that the plaintiff was to be and remain the full and absolute owner of said property, and the title and right of possession thereof was to remain in him, until he was so paid; and it was also agreed that the hogs were to go forward to Milwaukee in the name of the plaintiff as consignor, as already consigned, and that Harris would be entitled to receive from the proceeds thereof only the excess of their actual cost and $25; and that no part of said sum has ever been paid to the plaintiff.

The complaint then alleges that after the making of the agreement with Harris, he (Harris), without the knowledge and consent of the plaintiff or Thayer, induced the clerk of said railway company to change the shipment thereof, so that the same would go forward in the name of said Harris as consignor, and the shipment was so changed, and the hogs were forwarded to said defendant in the name of Harris as consignor; that the defendant received the hogs on or about the 10th of January, 1888, and sold the same, and received upon such sale the sum of $824.15, above all expenses of sale and transportation. The complaint further alleges that before the receipt of said hogs by the defendant, and before the sale thereof by him, the defendant had full notice of plaintiff's ownership of and rights in and to the proceeds or value thereof, and plaintiff duly demanded of him such value before the receipt or sale thereof by the defendant, but, notwithstanding this, said defendant unlawfully, and without the plaintiff's, or plaintiff's and said Thayer's, consent, converted to his own use the value of said hogs, viz., the sum of $824.15, and refused, and still refuses, to pay or account to plaintiff, or to plaintiff and Thayer, therefor, though due demand has been made on him by plaintiff so to do.

The complaint then sets out that the defendant refuses

to pay over the money to plaintiff because he claims that Harris was indebted to him on account, prior to the shipment of said hogs to him in the name of Harris, in a sum equal to or greater than the value of said hogs; and that he has passed to the credit of said Harris the value of said hogs. The complaint further alleges that the indebtedness of Harris to defendant, if any existed, was not incurred in any way by reason of the shipment of said hogs in the name of the said Harris, and that defendant has suffered no damage or incurred any risk in any way in consequence of such shipment, and that he passed to the credit of Harris the proceeds of such stock after full notice of plaintiff's right in and to the same.

The complaint then alleges an assignment from Thayer to the plaintiff of all his interest in the hogs, and all his interest in or claim against said defendant for the value of said property or damages for its conversion as aforesaid.

It seems to us very clear that, upon the facts stated in the complaint, the plaintiff is entitled to recover from the defendant in some form of action the amount received by him on the sale of the hogs in question, less the expenses of transportation and sale. The facts stated being admitted, they clearly show that Harris had no claim to the possession of the hogs, or to the proceeds of their sale, unless they brought more than $925, and the facts alleged show they did not bring that amount. The facts stated also show that the defendant knew before he received the hogs on the consignment of them to him by Harris, that Harris did not own the hogs and was not entitled to the proceeds of the sale, and that the plaintiff was entitled to such proceeds. The facts stated also show that the defendant has denied the right of the plaintiff to such proceeds, and has on demand refused to pay them to the plaintiff, or to plaintiff and Thayer. These facts clearly show an indebtedness of the defendant to the plaintiff, which the

plaintiff can recover in an action at law, either upon a general complaint for money had and received for the plaintiff's use, or upon a complaint alleging all the facts. See *Grannis v. Hooker*, 29 Wis. 65; *Wells v. Am. Exp. Co.* 49 Wis. 224, 230; *Graham v. C., M. & St. P. R. Co.* 53 Wis. 482.

But it is insisted by the learned counsel for the appellant that the complaint must be construed as stating an action in tort to recover for the conversion of the money received by the defendant on the sale of the hogs made by him as the agent of the plaintiff, and that, giving that construction to the complaint, it fails to state facts showing a tortious conversion of the proceeds of the sale by the defendant, and that the demurrer was therefore well taken. The only allegation in the complaint which can be construed as tending to show that the plaintiff may have intended to charge the defendant with a tort, and to proceed against him for the recovery of damages for such tort, is the following: After stating the facts showing that the plaintiff was entitled to the proceeds of the sale made by the defendant and that the defendant had notice of such fact, it is alleged that "the plaintiff demanded of him *such value* before the receipt or sale thereof by the defendant; but, notwithstanding this, said defendant has unlawfully, and without plaintiff's, or plaintiff's and said Thayer's, consent, converted to his own use *the aforesaid value* of said hogs, to wit, the sum of $824.15, and refused, and still refuses, to pay or account to plaintiff, or to plaintiff and said Thayer, therefor, though due demand has been made on him by the plaintiff so to do." The prayer for judgment is not for damages for the tortious conversion of the hogs or the proceeds thereof, but for the said sum of $824.15, with interest from January 10, 1888, and costs.

These allegations, we think, must be construed to mean that the defendant had the right to sell the hogs as he did,

and that he committed no wrong in making such sale, and that it was the duty of defendant, upon such sale being made, to account to the plaintiff for *the value* of the hogs so sold, less expense of sale and transportation, and a refusal on the part of defendant to account for such *value* to the plaintiff after demand. It is quite doubtful, to say the least, whether these allegations would be sufficient to charge the defendant with the conversion of the identical money received on the sale of such hogs, or to charge that the identical money received on the sale was the money of the plaintiff, and in order to maintain an action for the conversion of the money received on the sale of the hogs it would be necessary to state facts showing that the money so received by the defendant was the money of the plaintiff. The mere statement that the defendant was liable to account to the plaintiff for the value for which the hogs were sold would hardly be construed to mean that the identical money received on the sale was the money of the plaintiff. The mere allegation that the defendant unlawfully converted the value of the said hogs to his own use is not sufficient to change the complaint from an action to recover upon contract as for money had and received to the plaintiff's use into an action of tort for the conversion of money in his hands belonging to the plaintiff, when all the other allegations of the complaint are consistent with a claim to recover upon an express or implied contract. This was so held by this court in the case of *Whereatt v. Ellis*, 58 Wis. 625, 627. It is said in that case that the allegation "that the defendant converted certain crops to his own use," in an action by the plaintiff to recover the value of a share of said crops alleged to belong to the plaintiff, did not change the action into one for tort, in view of the other matters which give character to the action.

We think this complaint should be construed as a complaint to recover from the defendant the value of the hogs

of plaintiff lawfully sold by the defendant, and for which value the defendant was legally bound either by express or implied contract to pay to the plaintiff. The question does not, therefore, arise in this case whether a principal who intrusts his property to an agent to sell and account to him for the proceeds of the sale can maintain an action of tort against his agent for refusal to account for such proceeds, or, if a principal can maintain such action against his agent in any case, what facts he must state in his complaint to make out a good cause of action; and we do not feel called upon to discuss these questions upon this appeal.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings.